IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LOANNE K. NEMETH,

                        Plaintiff,                    OPINION & ORDER

    v.

                                                         14-cv-270-jdp

THE ANDERSEN CORPORATION
WELFARE PLAN,

                        Defendant.

---

Plaintiff, LoAnne K. Nemeth, seeks long-term disability benefits from defendant, an employee benefit plan governed by the Employee Retirement Income Security Act (ERISA). Nemeth's former employer, The Andersen Corporation (Andersen), is the sponsor and administrator of the plan. Hartford Life And Accident Insurance Company (Hartford) provides the insurance policy that pays benefits under the plan. Hartford also serves as the claims administrator for long-term disability claims.

The dispute has been in this court before. *Nemeth v. The Andersen Corporation Welfare Plan*, No. 10-cv-795, Opinion and Order (W.D. Wis. Feb. 2, 2012) (*Nemeth I*). Nemeth began working in the Andersen factory in 1987. In 1998, Nemeth suffered herniated cervical discs in a motor vehicle accident. Two surgeries left her with intractable neck pain and headaches. Nemeth took an extended leave from work, returned to work in a less physically demanding position, took another leave, and then returned to work again. In January 2009, Andersen terminated Nemeth's employment. Hartford denied Nemeth's application for long-term disability benefits. Nemeth appealed, and Hartford denied the appeal. Nemeth sought judicial review in state court; the Plan removed to federal court. In February 2012, this court determined that Hartford's denial was arbitrary and capricious, remanding the matter to

Hartford for a fresh determination of Nemeth's entitlement to benefits, correcting the identified errors.

Hartford has again denied Nemeth's application for long-term disability benefits (and her appeal of that denial). Nemeth again turns to this court, alleging that Hartford has repeated its errors in wrongfully denying benefits. Nemeth seeks money damages in the amount of the benefits owed, plus attorney fees and costs as allowed under ERISA. Nemeth also seeks declaratory and injunctive relief to order defendant to pay the benefits owed.

Now before the court are three motions by defendant. First, defendant moves to dismiss any claim for equitable relief under 29 U.S.C. § 1132(a)(3), on the grounds that money damages are plaintiff's exclusive remedy. Dkt. 10. Second, defendant moves for protective order to bar plaintiff from conducting discovery, on the grounds that the case must be decided solely on the administrative record. Dkt. 16. Third, defendant seeks leave to file an amended answer and affirmative defenses to assert that plaintiff has released her claim. Dkt. 18. For the reasons stated, the court will grant defendant's motion to dismiss, and deny defendant's motions for protective order and for leave to file an amended pleading.

ANALYSIS

**A. Motion to dismiss plaintiff's claim for equitable relief**

The primary remedy sought by plaintiff is the payment of benefits due, as provided in 29 U.S.C. § 1132(a)(1)(B). Under that same subsection, plaintiff may also enforce her rights under the Plan and clarify her rights to future benefits under the Plan. It is hard to see what else plaintiff might want out of this case, other than attorney fees and costs, as provided under 29 U.S.C. § 1132(g). Nevertheless, plaintiff's complaint also invokes 29 U.S.C. § 1132(a)(3),

presumably to support her request for an injunction requiring defendant to pay benefits, or to prevent defendant from denying her claim again.

Defendant argues that relief under § 1132(a)(3) is available only if plaintiff's injury is not remedied under ERISA's other provisions. Defendant has the core of a good argument: if plaintiff gets a full remedy under § 1132(a)(1)(B), her claim for equitable relief under § 1132(a)(3) would be superfluous. A further equitable remedy, where ERISA already provides an adequate remedy at law, would not be "appropriate" and should ordinarily be denied. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009). But defendant stretches a good point too far. Defendant contends that § 1132(a)(1)(B) provides plaintiff her exclusive remedy, and even if that remedy is not "adequate," plaintiff cannot state a claim under § 1132(a)(3). Essentially, defendant contends that if plaintiff has *any* remedy under § 1132(a)(1)(B), then she has *no* remedy under § 1132(a)(3). Neither *Varity* nor *Mondry* supports defendant's extreme reading of § 1132(a)(3).

Both *Varity* and *Mondry* provide that § 1132(a)(3) equitable relief is unavailable when ERISA provides another adequate remedy. In *Varity*, the Supreme Court described § 1132(a)(3) as a "catchall" provision that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." 516 U.S. at 512. Subsequently, in *Mondry*, the Seventh Circuit held that "[c]onsistent with *Varity's* admonition, a majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)." 557 F.3d at 805. It is hard to square the Supreme Court's notion that § 1132(a)(3) is a safety net for inadequate remedies with defendant's suggestion that § 1132(a)(1)(B) is plaintiff's exclusive remedy, regardless of whether that remedy is adequate. In *Mondry*, the plaintiff was entitled to both money damages under § 1132(a)(1)(B) and restitution, which under the

3

circumstances of that case was an equitable remedy under § 1132(a)(3).

The problem with plaintiff's position is that she has not made clear what relief she might be entitled to that would not be covered under § 1132(a)(1)(B). The injunctive relief she requests in paragraph 82 of the Complaint appears to duplicate exactly the legal remedy in paragraph 81. Unlike *Mondry*, and *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897 (E.D. Wis. 2005), plaintiff here has not alleged a breach of fiduciary duty, which brings equitable relief into play. She has not pleaded alternative theories. Based on the complaint, plaintiff seeks money damages, period. Her requested injunction is merely an aid to collection of those money damages. All this is available under § 1132(a)(1)(B), which allows a participant "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

The court will grant defendant's motion to dismiss plaintiff's claim for equitable relief because at this point, plaintiff's invocation of § 1132(a)(3) appears to be entirely superfluous. Plaintiff can get everything she has asked for under the auspices of § 1132(a)(1)(B) and § 1132(g). If, as the case evolves, plaintiff discovers that her § 1132(a)(1)(B) remedies are inadequate, she may seek leave to amend her complaint to request more.

### B. Defendant's motion for protective order

Plaintiff seeks Rule 30(b)(6) depositions of defendant and Hartford, by means of a notice and subpoena accompanied by document requests. Defendant has filed a motion under Rule 26(c)(1) for a protective order on the grounds that the sole issue in this ERISA case is whether the denial of benefits was reasonable, based on a deferential review of the administrative record. According to defendant, the deposition, and discovery generally, is irrelevant and thus unnecessarily burdensome. And, even if the deposition notice is proper, the

document requests are not.

Defendant again starts from a sound premise. "The standard of judicial review in civil actions under 29 U.S.C. § 1132(a)(1)(B) depends upon the discretion granted to the plan administrator in the plan documents." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 810 (7th Cir. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Because the plan in this case gives discretionary authority to Hartford to interpret the plan's terms and determine eligibility for benefits, the court would ordinarily review the denial of benefits under an arbitrary and capricious standard. *Id.* In the ordinary case, most discovery would be disfavored and the court's review would be limited to the administrative record.

But there are the extraordinary cases, in which "additional discovery is appropriate to ensure that plan administrators have not acted arbitrarily and that conflicts of interest have not contributed to an unjustifiable denial of benefits." *Id.* at 814-15. The parties debate what showing is prerequisite to conflict-related discovery. But the standard is clear enough for our purposes. Suspicion is not enough. The structural conflict inherent in having an insurance company both evaluate claims and pay them is not enough. But if plaintiff identifies a specific conflict of interest or instances of misconduct sufficient to suggest that review of the claim might not have been impartial, discovery beyond the administrative record may lead to relevant and admissible evidence. *Id.* at 813-14; *Dennison v. Mony Life Retirement Income Security Plan for Employees*, 710 F.3d 741, 747 (7th Cir. 2013) (endorsing a "softened" version of the *Semien* standard).

The next question is whether plaintiff has presented sufficient evidence to show that Hartford's decision-making was biased. In the complaint, plaintiff alleges that, as both the claims administrator and the source of funding for benefits, Hartford has a structural conflict of interest. Dkt. 1, at 11. This is the type of conflict that would be insufficient under *Semien*. But

there is more: plaintiff points to cases in which federal district courts found that Hartford's claims evaluation process was tainted by its compensation system. In *Kurth v. Hartford Life & Accident Ins. Co.*, 845 F. Supp. 2d 1087, 1096 (C.D. Cal. 2012), the court stated that "the nature of [Hartford's] relationship with the vendors and their reviewing physicians creates an incentive for the vendors to reach results that are favorable to [Hartford] in order to sustain their business relationship." The court concluded that it could reasonably be inferred that the conflict of interest "permeated the entire administrative decision-making process." *Id.* at 1096-98. In *Hertz v. Hartford Life & Accident Ins. Co.*, 991 F. Supp. 2d 1121, 1135 (D. Nev. 2014), the court found that there was sufficient evidence "to infer that Hartford employees are aware that their performance is evaluated on the basis of certain metrics which incentivize claim denial or termination." These are not mere structural conflicts, but actual evidence of conflicts that taint the claims evaluation process at Hartford. These conflicts existed while plaintiff's claims were evaluated. Plaintiff has presented sufficient evidence to warrant discovery of the incentive structures that would affect Hartford's claims evaluation process.

Defendant contends that the discovery issue was decided in *Nemeth I*, and that the law of the case doctrine should govern now. But *Kurth* and *Hertz* both post-date *Nemeth I*, and thus the evidence of bias at Hartford that was brought to light in those cases was not considered by the court when it set limits on plaintiff's discovery. The court will not invoke the law of the case doctrine.

The court has reviewed the notice of deposition to defendant and the subpoena to Hartford. Defendant's objections are not well-founded because the requests are properly calculated to lead to admissible evidence concerning the conflicts that may have affected the evaluation of plaintiff's claim. Defendant objects to the discovery of materials relating to the *Hertz* case on two grounds. First, defendant contends that the *Hertz* court did not require the

6

plaintiff to make the showing required under *Semien* before allowing discovery. Defendant misses the relevance of *Hertz*, which is not that the plaintiff in that case made enough of a showing to get conflict-related discovery. The relevance of *Hertz* is that the court, as the trier of fact, found that Hartford had a serious conflict of interest that tainted its claims evaluation process. Second, defendant claims that *Hertz* is irrelevant because it involved a different plaintiff and a different plan. Again, defendant misses the point, which is that *Hertz* shows that *Hartford*'s claims evaluation process is compromised. There may be documents in Hartford's production from the *Hertz* case that are ultimately irrelevant to this case, but the court will not allow Hartford to make that determination now, before plaintiff has a chance to see the documents.

The court will, however, restrict one topic. The authentication and establishment of the administrative record is unnecessary. Plaintiff may not waste time with that, unless a genuine issue concerning the integrity of the administrative record arises. Plaintiff's request for documents in conjunction with the depositions does not contravene the timing under Rule 34, which gives the responding party 30 days to produce documents. Accordingly, plaintiff's request for documents will be allowed.

Defendant's motion for protective order is denied.

### C. Defendant's motion for leave to add an affirmative defense

On August 22, 2014, defendant filed a motion for leave to file an amended answer and affirmative defenses. Defendant seeks to assert an affirmative defense based on a release plaintiff signed on January 22, 2009, at the termination of her employment with Andersen. According to defendant, plaintiff released any claim she might have against Andersen or the Plan arising from actions occurring before the date of the release. Defendant offers no reason why it did not raise this defense in *Nemeth I*, except to say that the release just turned up in August 2014 while

7

defendant was preparing the administrative record in this case for service on plaintiff. Plaintiff argues that defendant's proposed amendment should be barred because of undue delay, prejudice, and futility.

A court should grant leave to amend when justice requires. Fed. R. Civ. P. 15(a). And decisions on the merits are generally preferable to those resulting from the mechanical application of procedural rules. "If the underlying facts or circumstances relied upon by a [defendant] may be a proper subject of [a defense], he ought to be afforded an opportunity to test his [defense] on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the court may deny a motion to amend for undue delay, bad faith, dilatory motive, prejudice, or futility. *Id.* at 182. "The assessment whether there is undue delay or undue prejudice, as well as the ultimate decision to grant or deny leave to amend, is within the district court's discretion." *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 351 (7th Cir. 1992).

Defendant offers no reason for its long delay in asserting its release defense. This case is in a relatively early stage, but the answer in *Nemeth I* was filed on December 20, 2010, nearly four years ago. If defendant had a release defense, it should have asserted it then. Defendant waived the defense in *Nemeth I*; plaintiff makes a good argument that the waiver should extend to this case. Defendant's long delay is undue, even if it does not constitute a waiver.

Prejudice is manifest. If the release is binding and bars her claim, plaintiff has been put through a long ordeal for naught. But that is not a foregone conclusion. As plaintiff points out, she might have a counter to the release based on what she was told when she was terminated at Andersen. But now she must do so on the basis of five-year-old evidence, to her substantial prejudice.

Plaintiff also makes a good argument based on futility. The release might have been effective against plaintiff's original claims (which were based on actions taken before the release

8

was signed). But the issue now is Hartford's review of plaintiff's claim after the remand, which all took place after the release was signed. If defendant waived the release defense in *Nemeth I*, defendant does not explain how the release could be effective against actions that took place after plaintiff signed the release.

The issue in the case is whether the denial of plaintiff's claim was arbitrary and capricious. Defendant has not contended, and does not now contend, that the release played any role whatsoever in the denial of her claim. The release is therefore irrelevant, unless defendant is permitted to completely re-do this entire litigation from the very beginning. Justice does not require that defendant be afforded such an opportunity. Defendant's motion for leave to file an amended pleading is denied.

ORDER

IT IS ORDERED that:

1) Defendant's motion to dismiss, Dkt. 10, is GRANTED;

2) Defendant's motion for protective order, Dkt. 16, is DENIED; and

3) Defendant's motion for leave to file amended answer and affirmative defenses, Dkt. 18, is DENIED.

Entered this 7th day of November, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge